IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAEVE MCGRATH-MALOTT, *

Plaintiff, *

v. * Civil Action No. RDB-06-879

STATE OF MARYLAND, et al., *

Defendants. *

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Maeve McGrath-Malott ("Plaintiff" or "McGrath-Malott"), formerly a Deputy Sheriff for Washington County, Maryland, has brought this employment discrimination action against the State of Maryland ("the State"), the Board of County Commissioners of Washington County, Maryland ("the County"), the Washington County Sheriff's Office ("Sheriff's Office") and Charles F. Mades ("Mades"), Sheriff of Washington County, in his individual and official capacities. Her Complaint alleges, *inter alia*, that the Defendants discriminated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et. seq.*, 42 U.S.C. § 1983, and the Maryland Declaration of Rights, as codified in Md. Code Ann., Const. Declaration of Rights (LexisNexis 2006). Pending before this Court are three motions: the County's Amended Motion to Dismiss and for Summary Judgment[1] (Paper No. 16), the State's Motion to Dismiss or, Alternatively, for Summary Judgment (Paper No. 18), and Mades's Motion for Partial Dismissal and for Partial Summary Judgment (Paper No. 21). For the reasons stated below, the County's motion is GRANTED, the

[1] In light of the amended motion and this Court's ruling today, the County's initial Motion to Dismiss and for Summary Judgment (Paper No. 12) is hereby MOOT.

State's motion is GRANTED in part and DENIED in part, and Mades's motion is GRANTED in part and DENIED in part.

BACKGROUND

The facts are viewed in a light most favorable to the Plaintiff. Maeve McGrath-Malott worked as a Deputy Sheriff in the Sheriff's Office for Washington County, Maryland, from January 15, 1990, to October 28, 2003. During this time, Sheriff Charles Mades ("Mades") allegedly made several unwanted sexual advances towards McGrath-Malott and other female colleagues. He is also alleged to have commented that "women are only one step above niggers." (Compl. Ex. D.)

On April 22, 2003, McGrath-Malott was transferred from the Child Support Warrant division to courtroom duty in the Judicial division against her wishes. In that month, she was also placed on sick leave at the request of her doctor for a temporary mental health condition. Plaintiff remained on sick leave through the summer of 2003.

On July 25, 2003,[2] Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against the Washington County Sheriff's Office alleging that Mades had discriminated against her on the basis of her sex. Notice of this Charge was also sent to Mades. In August of 2003, the EEOC issued a right to sue letter to McGrath-Malott indicating that the agency could not determine whether any illegal conduct had taken place.

On September 17, 2003, as she had used up all of her sick leave, the Plaintiff requested in writing that Mades give her a temporary modified work assignment or, in the alternative, a leave

---

[2] The Complaint says the original EEOC Charge was filed "on or about May 22, 2003." (Compl. ¶ 20.) However, a review of the actual Charge reveals that it was filed on July 25, 2003. (Pl.'s Mem. Opp'n Mots. Dismiss Ex. 1.)

of absence without pay. In a letter dated September 24, 2003, her physician recommended that she be assigned to "light duty" for 4-6 weeks, after which she could be reevaluated for normal duties. (*See* Compl. Ex. F.) On October 6, 2003, Mades and the Washington County retirement benefits coordinator met with McGrath-Malott's treating physician to inquire about her condition. On October 9, 2003, Mades placed Plaintiff on administrative leave without pay, and on October 15, 2003, Mades denied Plaintiff's September 17th request for a modified work assignment.

On October 28, 2003, Plaintiff was discharged from her job. The letter of termination stated that she had exhausted all vacation, sick, and FMLA leave and that the Sheriff had "not received any indication when, if ever, [she would] be able to perform the essential functions of a law enforcement officer." (Compl. Ex. B.)

On January 13, 2005, Plaintiff filed an amended EEOC Charge of Discrimination ("Amended Charge") again alleging violations of Title VII for sex discrimination, but adding that the violations were "continuing." The last incident of discrimination listed was her discharge on October 28, 2003. On May 31, 2005, the EEOC determined that there was "reasonable cause to believe" that the Sheriff's Office had violated Title VII. Plaintiff received written notice from the EEOC on January 9, 2006, that the agency was unable to reach a resolution with the Sheriff's Office and that the United States Department of Justice would not pursue legal action.

McGrath-Malott filed the instant suit in this Court on April 5, 2006. Count I alleges sex discrimination in violation of Title VII, Count II alleges retaliation in violation of Title VII, Count III alleges violations of 42 U.S.C. § 1983, Count IV alleges violations of the Maryland

Declaration of Rights, and Count V alleges abusive discharge under Maryland common law. On May 26, 2006, Defendant Board of County Commissioners of Washington County filed a Motion to Dismiss and for Summary Judgment (Paper No. 12) which was amended on May 30, 2006 (Paper No. 16). Defendant State of Maryland filed a Motion to Dismiss or, Alternatively, for Summary Judgment on June 14, 2006 (Paper No. 18). Finally, Defendant Charles Mades filed a Motion to Dismiss in Part and for Partial Summary Judgment on June 19, 2006 (Paper No. 21) on all counts except Count III.

STANDARD OF REVIEW

**I. Motion to Dismiss**

Defendants first seek to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)). The "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (finding that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). Therefore, a 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling

him to relief." *Migdal*, 248 F.3d at 325; *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

## II. Summary Judgment

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. *Nat'l City Bank of Indiana v. Turnbaugh*, 463 F.3d 325, 329 (4th Cir. 2006). In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). However, the opponent must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an

issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW*, 187 F.3d 415, 422 (4th Cir. 1999)).

ANALYSIS

**I. Dismissal under Rule 12(b)(6)**

As an initial matter, McGrath-Malott argues that because the Defendants attached documents to their briefs in support of their motions to dismiss under Rule 12(b)(6), the motions must be treated as ones for summary judgment. (Pl.'s Mem. Opp'n Mot. Dismiss 2.) Rule 12(b) states:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*See Talbot v. U.S. Foodservice, Inc*., 191 F. Supp. 2d 637, 639 (D. Md. 2002) (treating motion to dismiss as motion for summary judgment where the Court had to consider "two items of evidence extrinsic to the pleadings" including the plaintiff's EEOC charge); *Talbot v. U.S. Foodservice, Inc*., 204 F. Supp. 2d 881 (D. Md. 2002) (same). However, the Fourth Circuit has created an exception such that "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (citations omitted); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006); *Corporate Healthcare Fin., Inc. v. BCI Holdings Co.*, 444 F. Supp. 2d 423, 427 n.10 (D. Md. 2006); *Popoola v. MD-*

*Individual Practice Ass'n, Inc.*, 230 F.R.D. 424, 427 (D. Md. 2005). None of the documents submitted thus far have been challenged for authenticity. Thus, to the extent the Defendants ask this Court to consult extrinsic documents that are not relied upon by the Plaintiff in her Complaint, the motions must be treated as motions for summary judgment.[3]

All Defendants refer to Plaintiff's EEOC Charges and the State also attaches the EEOC's letter of determination.[4] The Complaint references these documents and all three are clearly integral to her Title VII Counts. In addition to these documents, however, the State's Motion to Dismiss refers to an affidavit and the Board's Motion to Dismiss refers to a letter and an order from Judge J. Frederick Motz of this Court. (*See* State's Mem. Supp. Mot. Dismiss Ex. 4; Board's Mem. Supp. Mot. Dismiss Ex. 3.) The Plaintiff clearly did not rely on these exhibits in her Complaint. Thus, under the *American Chiropractic* standard, the three Defendants' motions to dismiss must be treated as motions for summary judgment where the extrinsic documents are relevant.

**A. Defendant Board of County Commissioners of Washington County**

The Board of County Commissioners of Washington County ("the County") has moved to dismiss all claims against it on the grounds that both Sheriff Mades and Plaintiff, a former

---

[3] Under Rule 12(b), all parties must be given "reasonable opportunity" to present relevant information to this Court. All three Defendants moved for dismissal or summary judgment, so they were certainly on notice of and prepared for a summary judgment determination. Also, both the Plaintiff and the Defendants attached documents to their briefs in support of their arguments. Thus, all parties have had a reasonable opportunity to provide material regarding summary judgment.

[4] Defendant Charles Mades explicitly incorporates into his Motion to Dismiss the State's and County's Memoranda, including all exhibits. (*See* Mades's Mem. Supp. Mot. Dismiss 5.) Thus, Mades's Motion to Dismiss must be deemed a motion for summary judgment to the same extent as the State's and County's motions.

Deputy Sheriff, were employees of the State of Maryland, not Washington County.

Under Maryland law, sheriffs and deputy sheriffs are considered employees of the state. Pursuant to the Maryland Constitution, sheriffs are elected state officials. *See* Md. Const. art. IV, § 44. In addition, "state personnel" includes "a sheriff or deputy sheriff of a county or Baltimore City" for purposes of the Maryland Tort Claims Act.[5] Md. Code Ann., State Gov't § 12-101(a)(6) (LexisNexis 2006). Maryland law also gives sheriffs the authority to hire deputy sheriffs. *See* Md. Code Ann., Cts. & Jud. Proc. § 2-309 (LexisNexis 2006). The Washington County Sheriff appoints deputy sheriffs, although the salaries and other administrative decisions are determined by the Washington County Commissioners. *Id*. § 2-309(w)(1)(iii). In addition, the statute determines the conditions under which a deputy sheriff of more than two years can be fired. *Id*. § 2-309(w)(2)(ii). Thus, the County has no control over the Sheriff's personnel decision with respect to the deputy sheriffs.

This Court has previously held that

> as a matter of Maryland law, the Sheriff and Deputy Sheriffs of [a Maryland County] are officials and/or employees of the State of Maryland rather than of [the] County. The role of a sheriff as a State constitutional officer whose duties are subject to control by the General Assembly leads us to the conclusion that sheriffs are State rather than local government employees. Because a deputy sheriff functions as the alter ego of the sheriff, and exercises the same authority, we reach the same conclusion with respect to deputy sheriffs.

*Willey v. Ward*, 197 F. Supp. 2d 384, 387-88 (D. Md. 2002) (quoting *Rucker v. Harford County*, 558 A.2d 399, 402 (Md. 1989)). *See also Prince George's County v. Aluisi*, 731 A.2d 888, 895

[5] See *infra* Part I.C.4 for a discussion of the Maryland Tort Claims Act.

(Md. 1999) ("Sheriffs and deputy sheriffs are state officials, not local government officials, and their duties are determined by state law, not locally enacted ordinances."); *Boyer v. State*, 594 A.2d 121, 128 (Md. 1991) ("[U]nder Maryland law the Sheriff and deputy sheriffs of Charles County are State employees") (citing *Rucker*, 558 A.2d at 402). It is clear from these cases and from the Maryland Code that Plaintiff was not an employee of Washington County.

Plaintiff argues that this Court should apply the test articulated in *Ram Ditta v. Maryland National Capital Park and Planning Commission*, 882 F.2d 456, (4th Cir. 1987) in determining whether Sheriff Mades acted on behalf of the State or Washington County. In *Ram Ditta*, the Fourth Circuit identified four factors for courts to consider, including "whether the state treasury will be responsible for paying any judgment that might be awarded . . . whether the entity exercises a significant degree of autonomy from the state, whether it is involved with local versus statewide concerns, and how it is treated as a matter of state law." *Id*. at 547-58. This Court has previously applied the factors to find that Baltimore City Police Department employees are Baltimore City employees rather than state employees. *Alderman v. Baltimore City Police Department*, 952 F. Supp. 256 (D. Md. 1997).[6] However, it is unnecessary to apply the four factors here, because Maryland statutory and case law expressly treat sheriffs as state employees with authority to make personnel decisions concerning deputy sheriffs. Plaintiff herself even notes that "Sheriff Mades was acting as a state official under color of state law when he terminated Plaintiff. . . ." (Pl.'s Mem. Opp'n Mots. Dismiss 12.) Thus, it is clear that both Mades and McGrath-Malott were employees of the State of Maryland.

---

[6] The Commissioner of the Baltimore City Police Department is appointed by the Mayor of the City of Baltimore and confirmed and approved for that position by the City Council of Baltimore. He is clearly not an elected state official as is the Sheriff of Washington County.

The County argues that this is significant because all five counts of the Complaint arise out of Plaintiff's employment. For example, Counts I and II purport to state claims under Title VII, which only imposes liability on an "employer." *See* 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer (1) to . . . discharge . . . or otherwise to discriminate against any individual . . . because of such individual's . . . sex"); 42 U.S.C. § 2000e-3 ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice. . . ."). This Court has previously held that, because deputy sheriffs are not county employees, a county cannot be held liable as an "employer" under Title VII. *Willey v. Ward*, 197 F. Supp. 2d 384, 388 (D. Md. 2002). Similarly, because the County has no control over personnel actions affecting deputy sheriffs, it cannot be liable for violating her federal or state constitutional rights to her job (Counts III[7] and IV) or for wrongfully discharging her (Count V).

In sum, there are no facts that would enable the Plaintiff to recover against the Defendant Board of County Commissioners of Washington County. Accordingly, the Complaint fails to state a claim upon which relief can be granted as to the Board of County Commissioners of Washington County, and the County's Motion to Dismiss is GRANTED as to all counts.[8]

---

[7] The County would also not be a "person" under the meaning of § 1983.

[8] The County also argues for dismissal on the grounds that (1) Plaintiff failed to exhaust her administrative remedies as to Counts I and II, and (2) Plaintiff failed to comply with the requirements of the Local Government Torts Claims Act as to Counts IV and V. (See County's Mem. Supp. Mot. Dismiss 8-11.) However, in light of this Court's ruling that McGrath-Malott failed to state a claim against the County because she was not an employee of the County, this Court need not reach the County's additional two arguments.

**B. Defendant Washington County Sheriff's Office**

The Washington County Sheriff's Office has not filed a motion in this case. However, as the Sheriff of Washington County is an elected state official pursuant to the Maryland Constitution, Defendant State of Maryland has noted that the Sheriff's Office is not a legal entity. Therefore, in its Motion to Dismiss, the State initially argues that Plaintiff cannot state a claim against the Sheriff's Office which is not a legal entity. (*See* State's Mem. Supp. Mot. Dismiss 3.)

In her Complaint, McGrath-Malott states that she worked for the Washington County Sheriff's Office. (Compl. ¶ 3.) She also named the Sheriff's Office in her EEOC Charge and Amended Charge. (*See* Pl.'s Mem. Opp'n Mots. Dismiss Exs. 1-2.) However, both Fourth Circuit and Maryland case law has held that a county sheriff's office is not a legal entity capable of being sued. *See, e.g., Revene v. Charles County Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) ("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency."); *Boyer v. State*, 594 A.2d 121, 128 (Md. 1991) ("Neither the Constitution nor any other provision of law of which we are aware creates a governmental agency known as the 'Sheriff's Department.' Consequently, . . . [it] is not an entity capable of being sued."); *Hines v. French*, 852 A.2d 1047, 1071 (Md. Ct. Spec. App. 2004) (dismissing the Harford County Sheriff's Office as a defendant because it "is not a separate legal entity capable of being sued").

Plaintiff argues that the Sheriff's Office should not be dismissed from the case because it "explicitly held itself out as a separate entity." (Pl.'s Opp'n Mots. Dismiss 18.) In support, she

cites case law holding that a sheriff can be held liable as an employer. (*See id*. at 18-19.) However, the cases McGrath-Malott cites do not address the precise question of whether a sheriff's *office* can be held liable as an employer if not a legal entity.[9]

This Court finds that the Washington County Sheriff's Office is not a legal entity capable of being sued. Therefore, Plaintiff has failed to state a claim against it upon which relief can be granted. Thus, the State's Motion to Dismiss with respect to the Washington County Sheriff's Office is GRANTED.

**C. Defendants State of Maryland and Charles Mades**

The Defendant State of Maryland moves to dismiss all counts of the Complaint, and Defendant Charles Mades ("Mades") moves to dismiss only Counts I (Title VII sex discrimination), II (Title VII Retaliation), IV (Maryland constitutional allegations), and V (abusive discharge). Both Defendants incorporate extrinsic evidence that the Plaintiff did not rely upon in her Complaint.[10] As such, their Motions to Dismiss will be treated as motions for summary judgment.

As an initial matter, Defendant Mades contends that he cannot be subject to liability as an

---

[9] McGrath-Malott also cites an unpublished opinion from this Court in which Magistrate Judge Connelly denied summary judgment to the Sheriff of Charles County on the plaintiff's Title VII claims. (*Id*. at 19 (citing *Coggins v. Davis*, Civil No. WGC-05-248, 2006 WL 1892417, at *29 (D. Md. May 31, 2006).) She contends that because Magistrate Judge Connelly referred to the Charles County Sheriff's Office on multiple occasions, "a county sheriff's office is a legal entity subject to suit." (Pl.'s Opp'n Mots. Dismiss 19.) However, this assertion lacks legal support. Although Judge Connelly mentioned the Charles County Sheriff's Office, the suit was against the Sheriff only, and the issue of whether the Sheriff's Office was a legal entity was never raised by the parties.

[10] See *supra* note 4 and accompanying text for a discussion of the documents attached by the State and incorporated by Mades in their Motions to Dismiss.

individual under Title VII. (Mades's Mem. Supp. Mot. Dismiss 4.) McGrath-Malott brought this cause of action against Mades in both his official and individual capacities. It is well settled that Title VII liability extends to "employers," not supervisors acting in their individual capacities. *See Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 181 (1998). However, a sheriff can be held liable in his official capacity, since he has the statutory duty of hiring and firing deputy sheriffs. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."). Thus, Mades can be held liable in his official capacity but not in his individual capacity. Accordingly, his motion for summary judgment must be GRANTED in part as to Counts I and II to the extent that they bring a cause of action against Mades in his individual capacity.

### 1. Count I: Title VII Sex Discrimination

Count I of the Complaint alleges that McGrath-Malott was subjected to disparate treatment, a hostile work environment, and ultimately discharged as a result of her sex. (Compl. ¶¶ 10, 12.) Because McGrath-Malott has alleged that she was subjected to disparate treatment as well as a hostile work environment, the two claims will be discussed separately.

Because the Plaintiff has not produced any direct evidence of employment discrimination, she must satisfy the three-step burden-shifting test first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a plaintiff must present enough evidence to prove a *prima facie* case of discrimination. *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 142-43 (2000). Second, once the plaintiff establishes a *prima facie* case, the burden shifts to the defendants to produce evidence that the adverse employment actions were taken against

the plaintiff "for a legitimate, nondiscriminatory reason." *Id.* at 142 (citing *Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). Third, the plaintiff is "afforded the 'opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant[s] were not [their] true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Burdine*, 450 U.S. at 253).

**a. Disparate Treatment**

First, Plaintiff claims that she was subjected to disparate treatment because of her sex. (Compl. ¶¶ 5, 7, 9.) Specifically, she points to three different discriminatory events: she was not promoted when male colleagues were, she was not given the same leave opportunities as male colleagues, and she was fired. (Compl. ¶¶ 7, 9-10.)

Defendants argue that Plaintiff cannot support her disparate treatment claims because her Amended Charge was not filed within 300 days of the alleged discriminatory events. *See* 42 U.S.C. § 2000e-5(e)(1). However, an amended EEOC charge can relate back to the date when the original EEOC charge was filed:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

29 C.F.R. § 1601.12. Because Plaintiff's Amended Charge, filed on January 13, 2005, concerns substantially the same allegations as her original EEOC Charge, it therefore relates back to the date when the first EEOC Charge was filed, July 25, 2003. (See Pl.'s Mem. Opp'n Mots. Dismiss Exs. 1-2.) Accordingly, all events occurring less than 300 days before July 25, 2003 can

form the basis of Plaintiff's disparate treatment claims.

Plaintiff alleges that she was not promoted when male colleagues were, she was not given the same leave opportunities as male colleagues, and she was fired because of her gender. (Compl. ¶¶ 7, 9-10.) It is undisputed that she was not promoted, that she was denied certain leave opportunities, and that she was fired. However, it is unclear at this stage what the motivation behind those actions was and to what extent male colleagues were treated differently. Although this Court must view the facts in a light most favorable to the Plaintiff as the nonmoving party, many essential facts are missing from the record because discovery has not commenced. *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n.5 (1986)) (holding that "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition" (alteration in original)). Accordingly, there are clearly genuine issues of material fact as to each of these claims, and the Defendants' motions for summary judgment are DENIED as to the disparate treatment claims in Count I.

**b. Hostile Work Environment and Sexual Harassment**

The State contends that Plaintiff has failed to exhaust her administrative remedies with respect to her claim for a hostile work environment, because it was not alleged in her EEOC charges. (*See* State's Mem. Supp. Mot. Dismiss 6.) Plaintiff acknowledges that she did not use the words "hostile environment" or "sexual harassment," in her EEOC charges.[11] (Pl.'s Mem. Opp'n Mots. Dismiss 3.) However, she argues that she "clearly described specific factual

[11] On the contrary, McGrath-Malott's initial EEOC Charge mentions that she was "harassed because of my sex, female." (Pl.'s Mem. Opp'n Mots. Dismiss Ex. 1.)

situations involving sex discrimination under Title VII." (*Id*.) She also points out that the EEOC does not demand "the detail or specificity in a charge that would be required in pleading in federal court." (*Id*.) EEOC regulations provide that "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to *describe generally* the action or practices complained of." 29 C.F.R. § 1601.12 (emphasis added). Thus, she claims that her EEOC charge sufficiently alleged sex discrimination to put the Defendants on notice of a harassment claim.

The Fourth Circuit has held that,

> [w]hile "the EEOC charge defines the scope of the plaintiff's right to institute a civil suit," "an administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." In other words, "if a plaintiff's claims in her judicial complaint are *reasonably related* to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit."

*Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005) (citations omitted) (emphasis added). In this case, Plaintiff's initial EEOC Charge mentions that she was "harassed because of [her] sex." (Pl.'s Mem. Opp'n Mots. Dismiss Ex. 1.) A reasonable investigation would likely have revealed the events she alleges give rise to her hostile work environment claim, including the statements and advances made by Sheriff Mades. In addition, under the Fourth Circuit's standard in *Miles*, McGrath-Malott's claim reasonably relates to her EEOC Charges. Accordingly, this Court finds that Plaintiff has exhausted her administrative remedies with respect to her hostile work environment claim in Count I.

**2. Count II: Title VII Retaliation**

Count II of Plaintiff's Complaint purports to state a claim for retaliation under Title VII, 42 U.S.C. § 2000e-3. Defendants allege that McGrath-Malott failed to exhaust her administrative remedies with respect to her retaliation claim because it was not mentioned in her Amended EEOC Charge. (State's Mem. Supp. Mot. Dismiss 6-7.) Plaintiff filed her first EEOC Charge on July 25, 2003. The EEOC issued its right to sue letter in August of 2003. Plaintiff alleges that she was placed on administrative leave without pay on October 9, 2003, and fired on October 28, 2003, in retaliation. She did not include a claim of retaliation in her Amended Charge, which was filed in January of 2005. (See Pl.'s Mem. Opp'n Mots. Dismiss Ex. 2.)

Both parties recognize the principle clearly set forth by the United States Court of Appeals for the Fourth Circuit in *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992), that a plaintiff "may raise [a] retaliation claim for the first time in federal court." *See Lauer v. Schewel Furniture Co.*, 84 Fed. Appx. 323, 328 (4th Cir. 2004); *Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 704 (D. Md. 2003); *Daso v. Grafton Sch., Inc.*, 181 F. Supp. 2d 485, 489 (D. Md. 2002). Thus, the Plaintiff's failure to check a box for retaliation in her Amended Charge with the EEOC does not preclude her retaliation claim in this case.

The Defendants' effort to distinguish the *Nealon* case is essentially based on the argument that McGrath-Malott was fired prior to the Amended Charge. This distinction does not have any particular merit with respect to the argument of exhaustion of remedies. As in the *Nealon* case, McGrath-Malott appropriately filed a Title VII claim with the EEOC and had a reasonable good faith belief that the State of Maryland and the elected state official, Mades, had discriminated against her. She "is entitled to have her retaliation claim heard" by this Court. *Nealon*, 958 F.2d at 590. Accordingly, this Court finds that McGrath-Malott has sufficiently

exhausted her administrative remedies and the motions of Defendants State of Maryland and Mades are DENIED with respect to Count II.

**3. Count III: 42 U.S.C. § 1983**

While Defendant Mades has not moved to dismiss or for summary judgment on Count III, the State has so moved for summary judgment on that claim on the grounds that it is not a "person" under the meaning of the statute. (*See* State's Mem. Supp. Mot. Dismiss 4.) Under § 1983, a plaintiff must establish three elements to state a cause of action: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). It is well settled that a state is not a "person" under the meaning of § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Berkley v. Common Council*, 63 F.3d 295, 307 (4th Cir. 1995) ("§ 1983 . . . does not provide a cause of action directly against the states.").

Accordingly, there are no genuine issues of material fact and the State is entitled to judgment as a matter of law on McGrath-Malott's § 1983 claim. Thus, the State's motion for summary judgment is GRANTED as to Count III.

**4. Counts IV-V: Maryland Declaration of Rights & Wrongful Discharge**

Count IV purports to state claims under Articles 10, 13, 19, 24, 40, and 46 of the Maryland Declaration of Rights. Count V purports to state a claim for wrongful or abusive discharge under Maryland common law. Both Defendants State of Maryland and Mades argue that these claims set forth in both counts should be dismissed due to noncompliance with the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't §§ 12-101, *et seq*. (*See*

State's Mem. Supp. Mot. Dismiss 4-5; Mades's Mem. Supp. Mot. Dismiss 5-6.) Furthermore, the State moves for the dismissal of both counts citing its immunity under the Eleventh Amendment to the United States Constitution. *See* U.S. Const. amend. XI.

**a. Maryland Tort Claims Act**

Under the MTCA, "the immunity of the State and of its units is waived as to a tort action" subject to certain limitations.[12] Md. Code Ann., State Gov't § 12-104 (LexisNexis 2006). As previously mentioned, sheriffs are considered "state personnel" and are therefore immune from liability to the same extent as the State under the MTCA when they act within the scope of their duties. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-522 (LexisNexis 2006); Md. Code Ann., State Gov't §§ 12-101, 12-105 (LexisNexis 2006). To comply with the MTCA, a plaintiff must send notice to the Maryland Treasurer within 1 year after the alleged injury occurs, wait for a final denial of the claim, and file suit within 3 years after the cause of action arises. Md. Code Ann., State Gov't § 12-106 (LexisNexis 2006).

At this stage in the proceedings, there are clearly factual disputes with respect to the disputed employment allegations, the dates of the alleged injuries, and the accrual of any causes of action. Ordinarily, in the context of a motion for summary judgment, these questions must await the discovery stage of the litigation. See *Harrods Ltd.*, 302 F.3d at 244 (quoting *Anderson*, 477 U.S. at 250 n.5. However, in light of this Court's ruling on immunity under the Eleventh Amendment, the issue of Plaintiff's noncompliance with the Maryland Tort Claims Act is MOOT.

---

[12] Intentional torts, as well as claims brought under the Maryland Constitution, including violations of the Declaration of Rights, fall within the substantive scope of the MTCA. *See Lee v. Cline*, 863 A.2d 297, 309-10 (Md. 2003).

**b. Eleventh Amendment Immunity**

The Defendant State also argues that Plaintiff's claims alleging violations of the Maryland Declaration of Rights and abusive discharge under Maryland common law, as set forth in Counts IV and V, are barred by the Eleventh Amendment to the United States Constitution. (*See* State's Mem. Supp. Mot. Dismiss 4.) Under the Eleventh Amendment, a state cannot be sued in federal court by its citizens without the state's consent. *See* U.S. Const. amend. XI. The State argues that it "has not consented to suit here." (*Id*.) Although not specifically addressed by the parties, the MTCA only waives state liability in *state* courts, not federal courts. This Court has previously addressed this precise issue. In *Dixon v. Baltimore City Police Department*, this Court noted that "under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents." 345 F. Supp. 2d 512, 513 (D. Md. 2003) (citation omitted), *aff'd*, 88 Fed. Appx. 610 (4th Cir. 2004). Thus, "[w]hile the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, . . . it has not waived its immunity under the Eleventh Amendment to suit in federal court." *Id*. (citation omitted). Accordingly, the State of Maryland is not subject to suit on the state claims in this Court.[13]

That Eleventh Amendment immunity extends to Defendant Mades as well, because he was acting in his official capacity. The Fourth Circuit has held that Eleventh Amendment "immunity applies to state agencies that may be properly characterized as 'arms of the State,' as

[13] The Order of this Court granting the motions to dismiss Counts IV and V does not preclude the Plaintiff from asserting these causes of action in state court pursuant to the Maryland Tort Claims Act.

well as to state employees acting in their official capacity." *Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996) (citations omitted). As previously discussed, under the Maryland Constitution, statutes, and case law, sheriffs are clearly agents and employees of the State of Maryland.[14] Thus, to the extent Mades was acting within his official capacity in rendering employment decisions affecting McGrath-Malott, he is protected by the Eleventh Amendment immunity as an agent of the State of Maryland and cannot be held liable on her state claims.

Accordingly, the State's and Mades's Motions to Dismiss are GRANTED as to Counts IV and V.

CONCLUSION

For the reasons stated above, Defendant Board of Commissioners of Washington County's Motion to Dismiss is GRANTED. The State of Maryland's Motion to Dismiss is GRANTED as to Counts III, IV, and V. With respect to Counts I and II, the State's Motion to Dismiss or, Alternatively, for Summary Judgment is DENIED. The Defendant Charles Mades's Motion to Dismiss Counts IV and V is GRANTED. With respect to Counts I and II, Mades's Motion to Dismiss or for Summary Judgment is GRANTED as to his individual liability and DENIED as to his official liability. In addition, the Washington County Sheriff's Office is DISMISSED as a defendant. Accordingly, this case will proceed against the State of Maryland with respect to Counts I and II and against Charles Mades with respect to Counts I, II, and III. A separate Order follows.

/s/______________________________

[14] *See supra* Part I.A.

Richard D. Bennett
United States District Judge

Date: February 23, 2007